UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CYNTHIA M. LAW,

      Plaintiff,

v.                                     Case No. 1:22-cv-639

COMMISSIONER OF SOCIAL            Hon Hala Y. Jarbou
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Cynthia M. Law brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claims for disabled widow's benefits (DWB) and supplement security income (SSI).

Administrative law judge (ALJ) Amy L. Rosenberg summarized the issues to be decided in plaintiff's case:

> The issue is whether [plaintiff] is disabled under sections 223(d), 202(e), and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

> Other issues are whether [plaintiff] is the widow of the deceased worker, has attained the age of 50, is unmarried (unless one of the exceptions in 20 CFR 404.335(e) apply), and has a disability that began before the end of the prescribed period. The prescribed period ends with the month before the month in which the claimant attains age 60, or, if earlier, either 7 years after the worker's death or 7 years after the widow was last entitled to survivor's benefits, whichever is later.

1

> In this case, [plaintiff's] prescribed period began on July 31, 1998, the date she was last entitled to survivor's benefits. Therefore, the claimant must establish that her disability began on or before July 31, 2005 in order to be entitled to a disabled widow's benefits.

PageID.110.

Plaintiff filed applications for DWB and SSI on March 28, 2019. PageID.109. In both applications, plaintiff alleged a disability beginning July 31, 2005. *Id*. Plaintiff identified her disabling conditions as post-traumatic stress disorder (PTSD), depression, anxiety, and a heart condition. PageID.319. Prior to applying for benefits, plaintiff stated that she obtained a law degree, but has not had any work since 2005 other than four months as a stocker at a grocery store. PageID.320.

Plaintiff's claims were denied initially and she filed a written request for a hearing. In this regard, ALJ Rosenberg noted that,

> On December 16, 2020, I held a telephone hearing due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic. All participants attended the hearing by telephone. The claimant agreed to appear by telephone before the hearing, and confirmed such agreement at the start of the hearing. Although informed of the claimant's right to representation, they chose to appear and testify without the assistance of an attorney or other representative. Joanne Pfeffer, an impartial vocational expert, also appeared at the hearing.

PageID.109. ALJ Rosenberg reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on February 4, 2021. PageID.109-119.

The Appeals Council granted plaintiff's request to review ALJ Rosenberg's decision and entered its own decision denying benefits. PageID.30-34.[1] In reaching this determination, the Appeals Council adopted ALJ Rosenberg's findings and conclusions:

---

[1] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

On April 21, 2022, the Appeals Council notified the claimant that it had granted the request for review. In that notice, the Council proposed to issue a decision finding that the claimant is not entitled to or eligible for benefits under the Social Security Act, but would consider evidence from Michigan Gastroenterology Institute dated September 9, 2020, to October 6, 2020 (11 pages) and proposed adding this evidence as an exhibit to the record. The Council also notified the claimant that it would consider a statement about the facts and the law in the case, or additional evidence if the additional evidence met the standard in the notice.

The Appeals Council received no statement or additional evidence. The Appeals Council exhibited the Council's notice of proposed action, the request for review, the hearing decision, and the evidence from Michigan Gastroenterology Institute listed in the Supplemental List of Exhibits attached to this decision.

The Appeals Council adopts the Administrative Law Judge's statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable.

The Appeals Council adopts the Administrative Law Judge's findings or conclusions regarding whether the claimant is disabled.

The regulations provide for a sequential evaluation process in determining whether a claimant is disabled (20 CFR 404.1520 and 416.920). The Appeals Council agrees with the Administrative Law Judge's findings under steps 1, 2, 3, 4 and 5 of the sequential evaluation; namely, that the claimant has not engaged in substantial gainful activity since July 31, 2005, that the claimant has severe impairments which do not meet or equal in severity an impairment in the Listing of Impairments, that she does not have any past relevant work and that there is not a significant number of jobs the claimant is capable of performing.

The Appeals Council further considered the effects of the claimant's mental impairment on her functional abilities. The Council adopts the Administrative Law Judge's conclusions regarding the degree to which the claimant's mental impairment restricts the ability to understand, remember, or apply information; presents difficulties in interacting with others; results in deficiencies in concentration, persistence or maintaining pace; and limits the ability to adapt or manage oneself.

PageID.30.  The Appeals Council's decision has become the final decision of the Commissioner and is now before the Court for review.[2]

---

[2] *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("SSA regulations provide that, if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision.").

## I.    LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.  (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.    THE APPEALS COUNCIL'S DECISION

The Appeals Council made preliminary findings: that the claimant [plaintiff] is the unmarried widow of the deceased insured worker and has attained the age of 50; that plaintiff met the non-disability requirements for DWB set forth in section 202(e) of the Social Security Act; and that the period in which plaintiff must establish that she became disabled ends on July 31, 2005. PageID.31-32.  As discussed, the Appeals Council adopted ALJ Rosenberg's review of the evidence, including the ALJ's "findings or conclusions regarding whether the claimant is disabled" and the ALJ's "findings under steps 1, 2, 3, 4 and 5 of the sequential evaluation."  PageID.30.

At the first step, the Appeals Council found that plaintiff has not engaged in substantial gainful activity since July 31, 2005 (the alleged disability onset date).  PageID.32.  *See* ALJ's decision, PageID.112.

At the second and third steps, the Appeals Council found that:

> The claimant has the following severe impairments: post-traumatic stress disorder, generalized anxiety disorder, agoraphobia with panic disorder, and major depressive disorder, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

PageID.30.

At the second step, ALJ Rosenberg found that plaintiff has not established any medically determinable impairment during the prescribed period applicable to the DWB claim, which ended on July 31, 2005.  PageID.112.

> The claimant alleged disability beginning on July 31, 2005, which is the last day of the prescribed period for disabled widow's benefits. The record contains no evidence establishing a severe medically determinable impairment as of July 31, 2005 or during the earlier part of prescribed period.

> The prescribed period runs from July 31, 1998 through July 31, 2005 (Exhibit 1A). The medical records in this case primarily cover the period from November 2018 to present day. The claimant provided some documentation relating to traumatic events in her life that occurred in the 1980s, 1990, 2002, and 2016 – 2018, but this evidence does not establish the existence of any medically determinable impairment during the prescribed period. (Exhibits 8D – 13D, 8E).

*Id*.  ALJ Rosenberg also found that during the later period applicable to plaintiff's claim for SSI (*i.e.*, "from the protective filing date of March 28, 2019 to the present"), plaintiff has severe impairments of PTSD, generalized anxiety disorder, agoraphobia with panic disorder, and major depressive disorder.  PageID.112-113.

At the third step, ALJ Rosenberg addressed Listings 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive compulsive disorders) and 12.15 (Trauma- and stressor-related disorders).  PageID.113.  The ALJ found that plaintiff did not meet the "paragraph B" criteria, *i.e.*, "the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning."  PageID.113.  After examining the evidence, the ALJ found that plaintiff did not meet the paragraph B criteria: plaintiff had no limitations in understanding, remembering, or applying information; plaintiff had moderate limitations in interacting with others; plaintiff had moderate limitations in her ability to concentrate, persist, or maintain pace; and plaintiff had moderate limitations in her ability to adapt or manage herself. PageID.113-114.  ALJ Rosenberg also reviewed the listings' "paragraph C" criteria stating:

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant does not meet the "paragraph C" criteria of listings 12.04, 12.06, or 12.15 because she does not have a medically documented history of chronic affective disorder of at least 2 years' duration and there is not evidence of both: 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of her mental disorder (see 12.00G2b); and 2. Marginal adjustment, that is, she has minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life (see 12.00G2c).

PageID.114.

At the fourth step, the Appeals Council found that:

The claimant's combination of impairments results in the following limitations on her ability to perform work-related activities: claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can sustain the attention and concentration necessary to carry out simple, routine tasks and can make simple work-related decisions; she can respond appropriately to supervisors and coworkers on a sustained basis, but should have just occasional contact with the public; and she can adequately adapt to changes in a routine work setting.

PageID.32.  *See* ALJ's Decision, PageID.114.  The Appeals Council also found that "[t]he claimant's alleged symptoms are not consistent with and supported by the evidence of record for the reasons identified in the body of this decision".  PageID.32.  *See* ALJ's Decision, PageID.115-118.  The Appeals Council further found that plaintiff does not have any past relevant work. PageID.32.  *See* ALJ's Decision, PageID.118.

At the fifth step, the Appeals Council found that:

If the claimant had the capacity to perform the full range of the light exertional level, 20 CFR 404.1569 and 416.969 and Rule 204.00, Table No. 1 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled. Although the claimant's nonexertional impairments do not allow her to perform the full range of work using the above-cited Rule as a framework for decision making, there are a significant number of jobs in the national economy which she could perform: landscape worker (Dictionary of Occupational Titles #406.687-010), an [sic] salvage sorter (Dictionary of Occupational Titles #929.687-022), and a janitor (Dictionary of Occupational Titles #389.683-010).

PageID.32.  *See* ALJ's Decision at PageID.118-119.  In this regard, ALJ Rosenberg found that

plaintiff could perform the requirements of occupations such as landscape worker (medium

exertion) (373,000 jobs); salvage sorter (medium exertion) (93,000 jobs); and janitor (507,000

jobs).  PageID.118-119.

Accordingly, the Appeals Council found that "[t]he claimant is not disabled as

defined in the Social Security Act at any time through February 4, 2021, the date of the hearing

decision."  PageID.32.

### III.    DISCUSSION

Plaintiff set forth two issues on appeal:

**A.    Is the FALJ [Federal ALJ Rosenberg] collaterally estopped from reaching a different legal conclusion of the SALJ [State ALJ Zalnab A. Baydoun] when the laws, evidence, facts and claimant are the same when the SALJ decision came first in time.**

**B.    It is unconstitutional and/or a legal absurdity when an inconsistant [sic] result occurs in two different legal opinions when the law, evidence and claimant are identical.**

The gist of plaintiff's claim is that because Michigan ALJ Zalnab A. Baydoun

found her disabled under Michigan's State Disability Assistance program (SDA), the Social

Security Administration (SSA) must accept that decision as binding on her applications for the two

federal disability programs, DWB and SSI.  *See* Plaintiff's Brief (ECF No. 12, PageID.730-737).

Plaintiff's claim is without merit.

ALJ Baydoun issued an undated decision mailed to plaintiff on April 8, 2020

(PageID.407-415).  In this decision, ALJ Baydoun identified plaintiff's claim as brought under

Michigan's SDA program and state policies, explaining that:

Department policies are contained in the Department of Health and Human
Services Bridges Administrative Manual (BAM), Department of Health and

9

Human Services Bridges Eligibility Manual (BEM), and Department of Health and Human Services Reference Tables Manual (RFT).

The State Disability Assistance (SDA) program, which provides financial assistance for disabled persons, was established by 2004 PA 344.  The Department administers the SDA program pursuant to 42 CFR 435, MCL 400.10 *et seq*. and Mich Admin Code, Rules 400.3151 – 400. 3180.

PageID.408.  ALJ Baydoun further explained that,

Petitioner [plaintiff] applied for cash assistance alleging a disability.  A disabled person is eligible for SDA. BEM 26 (April 2017), p. 1. An individual automatically qualifies as disabled for purposes of the SDA program if the individual receives Supplemental Security Income (SSI) or Medical Assistance (MAP) benefits based on disability or blindness. BEM 261, p. 2.  Otherwise, to be considered disabled for SDA purposes, a person must have a physical or mental impairment for at least ninety days which meets federal SSI disability standards, meaning the person is unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment. BEM 261, pp. 1-2; 20 CFR 416.901; 20 CFR 416.905(a).

*Id*.

Ultimately, ALJ Baydoun found that plaintiff was disabled under the SDA:

Based on the medical evidence presented in this case, listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma - and stressor - related disorders) were considered. were considered. [sic] The medical evidence presented does not show that Petitioner has physical or exertional impairments that meet or equal the required level of severity of any of the listings in Appendix 1 to be considered as disabling without further consideration. However, Petitioner's record reflects a history of physical, emotional and sexual abuse dating back to age 16 which has resulted in agoraphobia, immobilizing flashbacks, frequent nightmares, and panic attacks when out in public places and fear of her attacker who was released from prison.  Petitioner's record further indicates that she suffers from suicidal ideations, practices her noose tying, and has symptoms of depression, anxiety/panic disorder, agoraphobia and PTSD characterized by depressed mood, diminished interest in activities, sleep disturbances, thoughts of death/suicide, difficulty concentrating, irritability, and panic attacks that she will be attacked. Upon thorough review, and in consideration of Petitioner's presentation during the hearing, as well as the above referenced medical documentation of her mental impairments, were sufficient [sic] to establish that, when combined, the impairments meet or are equal to the required level in severity to the criteria in Appendix 1 of the Guidelines to be considered as disabled. Accordingly, Petitioner **is disabled** at Step 3 and no further analysis is required.

The Administrative Law Judge, based on the above Findings of Fact and Conclusions of Law, and for the reasons stated on the record, if any, finds Petitioner disabled for purposes of the SDA benefit program.

PageID.412-413 (emphasis in original).

Plaintiff raised a constitutional question of whether she received due process under the Fifth and Fourteenth Amendments, because while a Michigan ALJ found her disabled under Michigan's SDA program, a federal ALJ did not find her disabled under two federal programs (DWB and SSI). Plaintiff contends that she was denied due process because the state and federal agencies reached different results "when the law, evidence and claimant are identical." Plaintiff's Brief at PageID.731.

Plaintiff has not established a federal due process violation. As an initial matter, while plaintiff contends that defendant violated her due process (*id.* at PageID.731), she provides no constitutional argument to support this claim. "Due process requires that a social security hearing be 'full and fair.' " *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996). Here, the administrative record, which consists of almost 700 pages (PageID.22-715), reflects that plaintiff received the procedural due process which she was entitled to receive after filing applications for DWB and SSI. The federal proceedings included: an initial disability determination on the two claims; assembling medical records (PageID.428-715); a hearing before ALJ Rosenberg on December 16, 2020; a decision by ALJ Rosenberg on February 4, 2021; an a separate review and decision by Appeals Council on June 22, 2022. PageID.27-71, 74-104, 109-119, 261-264. The SSA was not bound by Michigan's decision regarding plaintiff's disability under the state's program. In this regard, under the SSA's regulations, the ALJ does not provide any analysis about a decision made by any other governmental agency about whether an individual is disabled. *See* 20 C.F.R. § 416.904.

Second, contrary to her contention, plaintiff's state and federal disability claims are not based on the same law and evidence.  Plaintiff's claims involve three different disability programs, *i.e.*, SDA, SSA, and SSI.  The SSA recognizes that different governmental agencies apply different rules for determining eligibility for disability benefits provided by those agencies.  While the SSA does not provide any analysis of the other agencies' disability determination, the SSA does consider the evidence which supported the other agencies' determinations:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers—make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. **Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 416.325) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 416.913(a)(1) through (4)**.

20 C.F.R. § 416.904 (emphasis added).[3]

Here, the differences in the state and federal programs are evident from the record. The requirements for DWB and SSI are set forth in the federal statutes and regulations cited by ALJ Rosenberg and the Appeals Council.  On the other hand, SDA is a state program created by a

---

[3] Defendant points out that 20 C.F.R. § 416.904 prevents other governmental agencies from dictating how the SSA awards federal disability benefits:

"[T]he fact that the state of Michigan purportedly applies SSA's regulations in making its own state disability determinations does not bind the SSA ALJ to the outcome of the state's decision.  *See* 20 C.F.R. § 416.904. Such a theory is implausible as it would allow states to dictate the outcome of federal benefits determinations simply by choosing to utilize federal regulations for their own state-level purposes and issuing their decisions first."

Defendant's Brief (ECF No. 14, PageID.752-753).

Michigan statute, 2004 PA 344.  PageID.408.  SDA's program requirements are set out in policies

adopted by Michigan's Department of Health and Human Services (DHHS) in three manuals

(BAM, BEM, and RFT).  *Id*.  Finally, Michigan's DHHS administers the SDA program pursuant

to state statutes (M.C.L § 400.10 *et seq*.), state regulations (Mich Admin Code, Rules 400.3151 –

400.3180), and federal regulations related to Title 42 (42 C.F.R. § 435).  *Id*.

In addition, the duration requirement for a disability is different between the SDA

and the two federal programs.  To receive DWB or SSI, an individual must be disabled for a period

of 12 months.

> Disability is defined as the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental impairment or
> combination of impairments that can be expected to result in death or that has lasted
> or can be expected to last for a continuous period of not less than 12 months.

PageID.110.  If an individual applying for Michigan's SDA is not receiving SSI (like plaintiff),

then a shorter time frame applies:

> An individual automatically qualifies as disabled for purposes of the SDA program
> if the individual receives Supplemental Security Income (SSI) or Medical
> Assistance (MA-P) benefits based on disability or blindness. BEM 261, p. 2.
> Otherwise, to be considered disabled for SDA purposes, a person must have a
> physical or mental impairment for at least ninety days which meets federal SSI
> disability standards, meaning the person is unable to do any substantial gainful
> activity by reason of any medically determinable physical or mental impairment.

PageID.408.

Next, contrary to plaintiff's contention,  the state ALJ considered different evidence

than the federal ALJ.  ALJ Baydoun entered his decision awarding SDA benefits on or about April

8, 2020.  The record does not contain the exact documents that ALJ Baydoun reviewed or the

evidence which supported the finding that plaintiff was disabled.  ALJ Baydoun summarized the

evidence as: a letter from Janis Cox of Apex Downriver Behavioral Health documenting the course

of plaintiff's psychotherapy treatment for major depressive disorder and PTSD from 1988 through

1999; medical records and an opinion from Dr. Zulfiqar Ahmed of Healthy Minds Psychiatric

Services for treatment since January 2019; treatment records for major depression and PTSD at

DeWitt Health Clinic since December 2018; and records from McLaren Greater Lansing

Cardiovascular Group since December 2018.  PageID.410-412.   As defendant points out, while

ALJ Baydoun stated that he considered listings 12.04, 12.06, and 12.15, and found plaintiff

disabled under the listings, he did not specify which listing(s) and which criteria he found were

met.  *See* Defendant's Brief (ECF No. 14, PageID.750) (citing PageID.412-413).

      The evidence considered by ALJ Rosenberg and the Appeals Council regarding

plaintiff's claim for DWB and SSI is set forth in the administrative transcript (PageID.22-715).

This transcript included evidence not considered by ALJ Baydoun including: additional medical

records through October and November 2020 (*see* PageID.429-580, 626-682); records from New

Oakland Family Centers since October 2020 (PageID.582-625); testimony given by plaintiff and

the vocational expert at the administrative hearing on December 16, 2020 (PageID.38-71); and

opinions prepared by SSA medical experts such as psychological consultant Rom Kriauciunas,

Ph.D. (PageID.74-101).

      While the undersigned has reviewed the different procedures and evidence

applicable to plaintiff's state and federal disability claims, other courts have taken a more direct

approach.  For example, in *Turcus v. Social Security Administration*, 110 Fed. Appx. 630 (6th Cir.

2004), the Sixth Circuit summarily rejected the arguments asserted by plaintiff in the present case:

> [The claimant] notes that he is receiving benefits from the state of Michigan which
> he asserts are identical to the disability requirements for social security disability
> benefits. However, a decision by another government agency as to an individual's
> disability is not binding upon the Social Security Administration. . . . Thus, the ALJ
> is not bound by a determination of disability made by the state of Michigan.

*Turcus*, 110 Fed. Appx. at 632.

Finally, to the extent the doctrines of res judicata or collateral estoppel apply to previous administrative decisions related to disability claims, those doctrines are limited to prior SSA decisions. *See Earley v. Commissioner of Social Security*, 893 F.3d 929, 933 (6th Cir. 2018) (res judicata may apply to administrative decisions by the SSA which litigate "the very same claim" (*i.e.*, the same period of time) as a previous SSA decision, and collateral estoppel would rarely apply to previous SSA decisions because "human health is rarely static"). For all of these reasons, the SSA is not bound by Michigan ALJ Baydoun's decision that plaintiff is disabled for purposes of Michigan's SDA. Accordingly, plaintiff's claims should be denied.

### C.    The ALJ's decision is supported by substantial evidence

In presenting her issues in this Court, plaintiff contends that ALJ Rosenberg reached the wrong result and "requests the Council [sic] carefully review the evidence and legal issues involved in this matter and reconsider the Opinion of [ALJ Rosenberg]." Plaintiff's Brief at PageID.737. As discussed, *supra*, ALJ Rosenberg's decision is not the final decision subject to this federal appeal. While the Appeals Council adopted ALJ Rosenberg's findings or conclusions regarding whether plaintiff is disabled, it granted plaintiff's request for review and issued its own decision denying benefits. *See* 20 C.F.R. § 404.981. Plaintiff is asking this Court to perform a de novo review of the evidence supporting her claim and reconsider the ALJ's decision. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard*, 889 F.2d at 681. Nor does this Court reconsider an ALJ's decision. As the Sixth Circuit re-iterated in *Preston v. Commissioner of Social Security*, No. 22-4026, 2023 WL 4080104 (6th Cir. June 20, 2023), the federal court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's decision is supported by substantial evidence:

15

[The claimant] challenges the ALJ's finding that he was not disabled during the relevant period and therefore ineligible for Disability Insurance Benefits. Our role here is a modest one. We are not the ALJ, so we do not "weigh evidence, assess credibility, or resolve conflicts in testimony[.]" *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th Cir. 2019) (citing *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Instead, we must affirm the ALJ's conclusion unless the ALJ "failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quotation marks and citation omitted). The "substantial-evidence standard" is not overly demanding. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It simply requires "more than a mere scintilla" of evidence, asking whether there is "relevant evidence" in the administrative record that a "reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks and citations omitted). . . .

[The claimant] sees things differently, largely arguing that the evidence the ALJ favored was flawed and that better record evidence supported a disability finding. But we are not the ALJ, and we have no license to reassess the record anew. *See Dyson*, 786 F. App'x at 588. The existence of potentially conflicting evidence is immaterial so long as substantial evidence supports an ALJ's determination. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). And as there is substantial evidence supporting the ALJ's disability determination here, we must affirm  *See Biestek*, 139 S. Ct. at 1154 ("[T]he threshold for [substantial evidence] is not high.").

*Preston*, 2023 WL 4080104 at *2-3.

### 1.    Plaintiff's DWB claim

In support of her claim, plaintiff points to a number of traumatic events which occurred in her life. While ALJ Rosenberg acknowledged this history, the ALJ found that plaintiff did not have a medically determinable impairment during the relevant time period for her DWB claim of July 31, 1998 through July 31, 2005. PageID.112. Upon reviewing the administrative record, including plaintiff's medical history and the exhibits cited by ALJ Rosenberg (Exhibits 8D, 9D, 10D, 11D, 12D, 13D and 8E, *see* PageID.112), the Court concludes that ALJ Rosenberg's findings and conclusions, which the Appeals Council adopted, are supported by substantial evidence.

### 2.    Plaintiff's SSI claim

16

With respect to plaintiff's SSI claim, the relevant period is "from the protective filing date of March 28, 2019 to the present." PageID.112. ALJ Rosenberg addressed plaintiff's medical records commencing with treatment at the Dewitt Health Center Family Medicine on November 9, 2018 and traced plaintiff's medical treatment to the current date in detail. PageID.115-118.

In addition, ALJ Rosenberg evaluated two opinions related to plaintiff's mental impairments. For claims filed on or after March 27, 2017, the regulations provide that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a).

> In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 404.1520c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

> The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

>> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

> 20 C.F.R. § 404.1520c(b)(2).

*Buck v. Commissioner of Social Security*, No. 1:21-cv-883, 2023 WL 2674194 at *3-4 (W.D. Mich. March 29, 2023).

17

First, ALJ Rosenberg addressed the opinions of psychologist Rom Kriauciunas, Ph.D.  The doctor's opinions are based upon a review of plaintiff's medical records (PageID.74-84):

> With regard to the opinion evidence, state agency psychological consultant, Rom Kriauciunas, Ph.D., opined that the claimant is able to understand, carry out, and remember simple instructions, and make judgments commensurate with the functions of simple work-related decisions (Exhibit 1A). Dr. Kriauciunas further elaborated that the claimant could respond appropriately to supervision, coworkers, work situations, and deal with changes in routine work settings. The opinion of Dr. Kriauciunas is persuasive, because it is consistent with the medical evidence presented prior and subsequent to that determination. I agree with Dr. Kriauciunas that the claimant would be able to perform unskilled work on a sustained basis. The records indicate that the claimant only sought treatment for his [sic] psychological impairments on a very limited basis (Exhibit 3F). During that time, the claimant was doing well on her psychiatrics medication regimen and consistently exhibited normal Mental Status Examinations. Moreover, her impulse control, judgment, thought content, thought process, psychomotor activity, and speech were all within normal limits. She also never exhibited suicidal ideation. In addition, the claimant has presented no other opinion from a mental health specialist opining that the claimant required a more stringent residual functional capacity assessment (Exhibits 4F, 6F, and 11F).

PageID.117.  The ALJ's evaluation of Dr. Dr. Kriauciunas' opinion, which the Appeals Council adopted,  is supported by substantial evidence in the record.

Finally, the record includes the opinion of Janis Cox, LMSW, who provided an undated letter which stated that she treated plaintiff with individual psychotherapy sessions from 1988 to 1999 on an intermittent basis.  PageID.512.[4]  ALJ Rosenberg addressed MS. Cox's opinion as follows:

> The claimant's social worker Janis Cox, LMSW, provided a letter stating that, due to the claimant's mental impairments, she would not be a candidate for work in any capacity. (Exhibit 5F). Ms. Cox's statement goes to an ultimate issue reserved to the Commissioner, and she did not provide an opinion on any specific functional limitations. Under the Social Security Regulations, statements on issues reserved to the Commissioner are considered inherently neither valuable nor persuasive, and are not evaluated as opinion evidence. 20 CFR 416.920b(c).

---

[4] The SSA received the letter on May 14, 2019.  PageID.76.

PageID.117-118.

Plaintiff contends that "Janice Cox, LMSW is ignored as are government records provided as longitudinal evidence [Exhibits 8D, 9D and 10D]."  Plaintiff's Brief at PageID.732-734.  Plaintiff's contention is without merit.  The ALJ gave sufficient reasons for finding that Ms. Cox's letter was not persuasive and noted that the longitudinal evidence referenced by plaintiff does not establish the existence of any medically determinable impairment during the prescribed period.  PageID.112.  ALJ Rosenberg's findings and conclusions, which the Appeals Council adopted, are supported by substantial evidence.

## IV.    RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated: July 17, 2023                              /s/ Ray Kent
                                                  RAY KENT
                                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).